UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) <br> ) <br> ) |
| Applicant, | ) No. <br> ) |
| v. | ) <br> ) |
| GREGORY LEMELSON, | ) <br> ) |
| Respondent. | ) <br> ) |

**APPLICATION FOR ORDER TO SHOW CAUSE AND
FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA**

Respondent Gregory Lemelson (a/k/a Fr. Emmanuel Lemelson) ("Lemelson") has refused to comply with a document subpoena issued by an Administrative Law Judge ("ALJ") overseeing an administrative proceeding ("AP") before the Securities and Exchange Commission. The AP is a "follow-on" proceeding instituted by the Commission after a jury in the District of Massachusetts, on November 5, 2021, found Lemelson liable for making three fraudulent statements in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder.[1] The Commission instituted the AP to determine whether it is in the public interest to bar Lemelson from associating with any broker, dealer, investment adviser, or other designated securities-related firm (an "associational bar") based on the district court injunction.

In the AP, the SEC's Division of Enforcement ("Division") requested that the ALJ issue a document subpoena in advance of a hearing on the merits set for July 7, 2025. Lemelson made

---

[1] The jury rendered a split verdict. Respondent was found not liable for a fourth statement. And the jury declined to find him liable under (1) Rules 10b-5(a) and (c) promulgated under Section 10(b) of the Exchange Act (scheme liability) and Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder.

a motion to quash the subpoena, which the ALJ granted in part and denied in part. Specifically, the ALJ narrowed the 18 categories of documents the Division sought and instead issued a subpoena for four categories of documents the ALJ found to be relevant and not "unreasonable, oppressive, excessive in scope, or unduly burdensome." 17 CFR § 201.232(b). The narrowed subpoena issued on January 31, 2025, and after some extensions due to briefing by the parties described below, had a return date of March 31, 2025.[2]

Lemelson moved to stay the AP and for interlocutory review of the ALJ's order issuing the narrowed subpoena, all of which were denied by both the ALJ and the Commission.[3] Significantly, in those various motions, Lemelson never claimed that the subpoena was improperly issued or that service was ineffective.

Nevertheless, on April 3, 2025, Lemelson's counsel unequivocally stated that Respondent will not comply with the subpoena and will not produce documents unless ordered to do so by a United States District Court:

> In light of the strong legal arguments we have presented [in the DDC Action] regarding what we view as the unlawful nature of the administrative proceeding in general, and the subpoena in particular, my client will not produce any documents unless and until compelled by a court of competent jurisdiction to do so.

[Ex. A (email from Lemelson counsel to Division counsel).]

The Division therefore asks this Court to order Lemelson to show cause why he should not comply with the administrative subpoena. A Proposed Order is attached.

---

[2] The original return date of the narrowed subpoena was February 21, 2025.

[3] Lemelson also moved for a preliminary injunction in federal district court seeking to enjoin the AP. That motion, along with the Commission's motion to dismiss, remains pending. *See Lemelson v. Securities Exchange Commission*, No. 1:24-cv-02415-SLS (D.D.C., filed Aug. 21, 2024) (the "DDC Action").

## BACKGROUND

### A. The District Court Action

Lemelson has served as Chief Investment Officer of investment adviser Lemelson Capital Management ("LCM") from at least 2014 to the present. Both Lemelson and LCM are investment advisers, subject to the Investment Advisers Act of 1940 ("Advisers Act"). At all relevant times, Lemelson, through LCM, managed a hedge fund called the Amvona Fund LP, and he made all investment decisions for that fund.

Between May 2014 and October 2014, Lemelson and LCM took short positions in the stock of Ligand Pharmaceuticals Inc. ("Ligand") on behalf of The Amvona Fund. Between June and August 2014, Lemelson published reports concerning Ligand, and also gave an interview in which he discussed the company.

In September 2018, the Commission sued Lemelson and LCM. The complaint alleged that they reaped illegal profits by making false and fraudulent statements to drive down the price of Ligand, thereby increasing the value of their short position. The Commission charged Lemelson and LCM with violations of Exchange Act Section 10(b) and Rule 10b-5 and Advisers Act Section 206(4) and Rule 206(4)-8.

On November 5, 2021, after a nine-day trial, the jury found that Lemelson (and by extension LCM) made three materially false and fraudulent statements about Ligand and its business partner in violation of Exchange Act Section 10(b) and Rule 10b-5 and that he did so with scienter, *i.e.*, a state of mind reflecting fraudulent intent or recklessness. The jury found that each of these statements violated Exchange Act Section 10(b) and Rule 10b-5(b).

### B. Jury Trial and Final Judgment

Following the jury verdict, the parties proceeded to the remedies phase of the litigation. In its Memorandum and Order on remedies, the District Court found, among other things, that:

- One of the three fraudulent statements made by Lemelson "was particularly egregious";

- Lemelson would be in a position to violate again "as he continues to work as an investment adviser and recently started a new fund, Spruce Peak Fund. Investors will continue to look to his advice and rely on the truthfulness of his reports"; and

- "Lemelson continues to unabashedly defend his actions. [He] does not recognize the wrongfulness of his conduct or acknowledge when he was clearly wrong . . . . His pugilistic approach to the litigation . . . indicated he has not learned his lesson."

[*Securities and Exchange Commission v. Lemelson*, No. 1:18-cv-11926-PBS (D. Mass. filed Sept. 12, 2018) ("Remedies Order"), ECF No. 273 at 9-10.]

The District Court enjoined Lemelson from violating Exchange Act Section 10(b) and Rule 10b-5 for five years,[4] and ordered him to pay a Tier III civil penalty of $160,000.[5] [*Id*. at 24.] The jury's verdict and the District Court's Remedies Order were affirmed by the First Circuit Court of Appeals and the Supreme Court denied Lemelson's petition for a writ of certiorari.

### C. The Follow-On Administrative Proceeding

The Commission issued an Order Instituting Proceedings on April 20, 2022. The

---

[4] The District Court wrote that it was imposing a five-year injunction, instead of a permanent one, because "Lemelson's conduct warrants an injunction, but his violation was not as severe as in many of the cases where courts ordered permanent injunctions." [Remedies Order at 10.]

[5] Tier III penalties are reserved for those violations of the federal securities laws that (i) involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and (ii) directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

Commission later denied the Division's motion for summary disposition (the analog of a motion for summary judgment) and assigned the matter to an ALJ for a hearing on the merits. That hearing is set to begin on July 7, 2025, in Boston.

In the AP, the Division requested that the ALJ issue a document subpoena to Lemelson. Lemelson moved to quash the subpoena. That motion was granted in part and denied in part. As noted above, the ALJ narrowed the subpoena to four categories of documents. [*See* Ex. B (January 30 Order).] The ALJ found that these four categories of documents are relevant to the public interest factors set forth in *Steadman v. SEC*, 603 F.2d 1126 (5th Cir. 1979), aff'd on other grounds, 450 U.S. 91 (1981), which bear on the appropriateness of an associational bar:

1. A list of names and contact information for Respondent's present investor clients and former investors who had been clients at some point from January 2020 to present.

2. All communications concerning any complaints by investors and prospective investors in any funds managed by Respondent from January 2020 to present.

3. All communications from Respondent to investor clients or the public concerning *SEC v. Lemelson* from January 2020 to present.

4. A list of any litigation, arbitration, enforcement action by any state, federal, or international securities regulator, criminal authority, or self-regulatory agency, or other proceeding to which Respondent was a party from January 2020 to the present and all documents filed and served by Respondent in those proceedings, and the transcripts of Respondent's testimony in them. And, for the FINRA arbitration proceeding titled *The Amvona Fund, LP v. Clear St., LLC*, No. 20- 01555, Clear Street's exhibits 128, 130, 132, 134, 135, 136, 137, 138, and 139.

[*Id.*]

The narrowed subpoena issued on January 31, 2025. [Ex. C (January 31 subpoena).] After denying a series of motions to stay and to seek interlocutory appeal to the Commission, the

5

ALJ ordered a revised subpoena return date of March 31. On April 3, Respondent's counsel unequivocally stated that Respondent will not comply with the subpoena and will not produce documents until ordered to do so by a "court of competent jurisdiction". [Ex. A.]

## ARGUMENT

### I. THIS COURT HAS JURISDICTION TO ENFORCE SEC SUBPOENAS IN A SUMMARY PROCEEDING

The Commission's Rules of Practice govern the conduct of APs. *See* 17 CFR § 201.100, *et seq*. Under Section 203(f) of the Advisers Act, the Commission may impose an associational bar against Lemelson if: (1) at the time of the alleged misconduct, he was associated with an investment adviser; (2) he is "temporarily enjoined by order, judgment, or decree of any court of competent jurisdiction . . . from engaging in or continuing any conduct or practice in connection with . . . the purchase and sale of a security;" (3) it is in the public interest to do so; and (4) it does so " on the record after notice and opportunity for hearing". 15 U.S.C. § 80b-3(e)(4), (f).

In an AP, the presiding ALJ may issue subpoenas at the request of a party. 17 C.F.R. §§ 201.111(b), 201.232(a). If a respondent does not comply with a subpoena, the Exchange Act expressly gives this Court jurisdiction to order the respondent to comply. 15 U.S.C. § 78u(c). As for venue, Exchange Act Section 21(c) authorizes the United States District Court where the Commission is carrying on a proceeding to enforce the Commission's subpoenas. 15 U.S.C. § 78u(c) ("In the case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation *or proceeding* is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records.") (emphasis added). Here, the AP will be heard by the ALJ in Boston. Subpoena

enforcement actions apply to subpoenas issued in Commission investigations *and* those issued in Commission proceedings.  *Id.*  The same standards apply.

The Exchange Act authorizes the Commission to seek an order from this Court requiring compliance with a subpoena through a summary proceeding.  15 U.S.C. § 78u(c); Fed. R. Civ. P. 81(a)(5).  *See also SEC v. McCarthy*, 322 F.3d 650, 658 (9th Cir. 2003) (summary proceedings are appropriate for SEC subpoena enforcement actions); *SEC v. Sprecher*, 594 F.2d 317, 319-20 (2d Cir. 1979) (same); *SEC v. Harman Wright Grp., LLC*, 2018 WL 6102758, at *2 (D. Colo. Nov. 21, 2018) (compelling compliance with SEC administrative subpoenas).  Accordingly, the Commission requests the Court promptly hear and rule on the Commission's application to avoid delay in the hearing scheduled to begin July 7, 2025.  *SEC v. First Sec. Bank*, 447 F.2d 166, 168 (10th Cir. 1971) ("Questions concerning agency subpoenas should be promptly determined so that the subpoenas, if valid, may be speedily enforced.") (citing *United States v. Davey*, 426 F.2d 842, 845 (2d Cir. 1970)).

## II.  THE COURT SHOULD ENFORCE THE SUBPOENA

To enforce an administrative subpoena, a court must be satisfied that:  the inquiry must be for a proper purpose; the information sought must be relevant to that purpose; and statutory procedures must be observed.  *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975) (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)) (applying the *Powell* standard and enforcing SEC administrative subpoena in District of Massachusetts).

Once the Commission meets these criteria, the respondent bears the burden of establishing that the Commission's purpose was unlawful or its subpoena unreasonable.  *SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978) (enforcing SEC subpoena when respondent did not demonstrate that subpoena was an unreasonable burden); *Howatt*, 525 F.2d at 229

(enforcing SEC subpoena where respondent did not demonstrate that agency was acting in bad faith); *SEC v. Murray Dir. Affiliates, Inc.*, 426 F. Supp. 684, 687 (S.D.N.Y. 1976) (applying *Powell* and enforcing subpoena when "it would not be abusive for this court to compel compliance with the subpoena").

The First Circuit has recognized that Congress committed investigations and certain administrative proceedings to the Commission and "it is not the court's role to intrude into the [Commission's] function." *Howatt*, 525 F.2d at 229. As a result, the respondent's burden of showing unreasonableness "is not easily met." *SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973) (refusing respondent's request for the court to determine whether subject of inquiry was within SEC's jurisdiction and enforcing SEC subpoena where the inquiry was for a legitimate purpose and the information sought was relevant to the inquiry). Here—particularly when the ALJ has already reviewed and limited the subpoena—the Commission's subpoena satisfies all applicable standards, and Respondent cannot meet his burden of demonstrating that the Commission's actions are unreasonable or unlawful.

**A.     The Division's requested subpoena was issued for a proper purpose.**

The ALJ-issued subpoena ordered production of documents that may be relevant to the *Steadman* factors, which will be the focus of the July 7 hearing. Such a proceeding is authorized by law, as set forth above, and the subpoena was therefore issued for the proper purpose of advancing the contested administrative proceeding.

**B.     The subpoena satisfies all administrative requirements.**

The subpoena issued to Lemelson satisfies all applicable administrative requirements. As set forth above, the ALJ may issue document subpoenas at the request of a party. 17 C.F.R. §§ 201.111(b); 201.232(a)-(c). Lemelson does not contend that the subpoena was issued

improperly or that service was ineffective. Lemelson also moved to quash the subpoena, as authorized under the SEC Rules of Practice. 17 CFR § 201.232(e). In short, the subpoena was validly issued in compliance with the Rules of Practice, and Lemelson availed himself of available remedies.

      **C.    The Division is seeking relevant information.**

For purposes of subpoena enforcement, relevance is established when the information sought is not "plainly incompetent or irrelevant for any lawful purpose." *Arthur Young & Co.*, 584 F.2d at 1029 (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). The court in *Arthur Young* held that "the test is relevance to the specific purpose, and the purpose is determined by [Commission staff]." *Id.* at 1031 (citation omitted).

The information sought is plainly relevant. As noted above, the ALJ already determined that the documents sought are relevant to the proceeding, which will focus on the *Steadman* factors to determine whether an associational bar is in the public interest:

1. The egregiousness of the respondent's actions.//
2. The isolated or recurrent nature of the infraction.
3. The degree of scienter involved.
4. The sincerity of the respondent's assurances against future violations.
5. The respondent's recognition of the wrongful nature of his conduct.
6. The likelihood that the respondent's occupation will present opportunities for future violations.

603 F.2d 1126 at 1140.

The ALJ approved the four categories of documents noted above, all of which concern Lemelson's conduct and the appropriateness of an associational bar. Request 1 seeks to identify

9

potential witnesses who were or are investors in Lemelson's fund(s). Requests 2 and 3 seek public statements and communications with Lemelson's current and former investors to determine whether he has made misrepresentations or engaged in other misconduct. For example, as specifically called for in Request 3, the Division believes that Lemelson has made public statements that mischaracterize the outcome of the underlying *SEC v. Lemelson* civil action. Request 4 relates to a FINRA arbitration brought by Lemelson against his broker seeking damages resulting from a March 2020 margin call that Lemelson was unable to meet, which is relevant to his professional conduct following the jury verdict. Finally, in issuing the subpoena, the ALJ necessarily found that the revised subpoena was not "unreasonable, oppressive, excessive in scope, or unduly burdensome." 17 CFR § 201.232(b).

## **CONCLUSION**

For these reasons, the Commission asks the Court to issue an order to show cause, if any exists, why Lemelson should not comply with the administrative subpoena.

        UNITED STATES SECURITIES AND
        EXCHANGE COMMISSION

        By its attorneys,

        */s/ Alfred A. Day*
        Alfred A. Day (Mass. BBO No. 654436)
        Marc Jones (Mass BBO No. 645910)
        Senior Trial Counsel
        Boston Regional Office
        33 Arch Street, 24th Floor
        Boston, MA 02110
        (617) 573-8900 (Main)
        daya@sec.gov